IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RALPH D. WHITE,               )
                              )
        Plaintiff,            )        Civil Action No. 7:20-cv-00420
                              )
v.                            )        **MEMORANDUM OPINION**
                              )
DR. KYLE SMITH, *et al.*,     )        By:     Hon. Thomas T. Cullen
                              )                United States District Judge
        Defendants.           )

Plaintiff Ralph D. White, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against five defendants, all of whom are identified as physicians or nurses at facilities where White was incarcerated. White alleges that the defendants failed to ensure that he received adequate care for a lesion on his right foot, in violation of his Eighth Amendment rights. Among other allegations, he claims that he needed surgery, but his scheduled surgery never occurred. White further alleges that by the time the lesion was surgically removed almost two years later, it had developed into malignant melanoma.[1]

The matter is before the court on a motion to dismiss by one of the defendants, Dr. Ericka S. Young. The motion is fully briefed and ripe for disposition. For the reasons discussed below, Dr. Young's motion to dismiss will be granted. The court will also dismiss all claims against the last remaining defendant, Nurse A. Phyl, who has not yet been served.

## I.     FACTUAL BACKGROUND

The allegations against Dr. Young, who is identified in the complaint as "John or Jane

---

[1] Defendant Dr. Kyle Smith, who performed an excision of the lesion and subsequently sent White for an outside excision, has averred that White's final diagnosis showed that the lesion was not melanoma, but was in fact benign. For purposes of ruling on Dr. Young's motion, however, that dispute is irrelevant.

Doe" or Dr. E, are contained in paragraphs 13–18, 26, 27, and 51. (ECF No. 1, at 3, 5, 8.) They relate only to Dr. Young's treatment of White during an approximately six-week period when he was incarcerated at Nottoway Correctional Center ("Nottoway").

White's complaint includes some of his medical records. From the complaint and those records, it appears that White was housed at the Rappahannock Regional Jail ("RRJ") on January 31, 2018, when medical staff at that facility assessed him as having a "[h]yperpigmented lesion on dorsum of right foot" and referred him to an outside podiatrist for assessment. (Med. R. at 7 [ECF No. 1-3].) He ultimately was scheduled for a May 14, 2018 surgery to treat the growth.

But on or about April 24, 2018, before he could have either his pre-operative visit for the surgery or the surgery itself, White was transferred from RRJ to Nottoway. (*Id.* at 3.)[2] The medical transfer sheet from RRJ notes that White had three pending appointments with outside providers scheduled for May.[3] These were a May 3, 2018 "pre-op visit with Dr. Roussell at Stafford Foot and Ankle Center"; a May 10, 2018 appointment for a "carotid study and [follow-up] with Dr. Yazdani at Nova Cardiovascular Care"; and a May 14, 2018 "right foot surgery by Dr. Roussell at Stafford Hospital Center." (*Id.*)

White's complaint and attached medical records include two documents referencing

---

[2] The precise date of White's transfer from RRJ to Nottoway is not clear from White's complaint; he merely states that he was admitted to VDOC at Nottoway "in May of 2018." (Compl. ¶ 8 [ECF No. 1]). The medical transfer sheet from RRJ, however, is dated April 24, 2018 (Med. R. at 3), and Nottoway's paperwork indicates that he was "received" into their custody on that date. (ECF No. 28-2, at 88.) Because the exact date does not affect the court's analysis, the court thus treats April 24, 2018 as his transfer date.

[3] The medical transfer sheet is a one-page document in which medical information is conveyed from one facility to another when a prisoner is transferred. It includes fields for the dates of most recent vaccinations and physical, current medications, current medical problems requiring attention, and pending appointments. It is completed by an individual at the transferor facility and sent to the new facility.

Dr. Young's treatment of his foot at Nottoway. First, there is a document dated May 7, 2018, titled "Nursing Evaluation Tool: General Sick Call," which was completed by nurse A. Phyl, but also bears Dr. Young's signature. (*Id.* at 10.) The form states that the area on his right foot "looks necrotic but offender said it has looked this way for years." (*Id.*) The form also notes that White told Phyl that he "was due to have surgery the day he left [the] jail." (*Id.*) That was incorrect information, though; as noted, he left the jail before his pre-operative visit or his surgery.[4] The nurse referred White to a physician (Dr. Young), and Dr. Young signed that form and wrote that he should seek "[f]ollow up at [his] final destination." (*Id.*) She also instructed him to return if the condition worsened. (*Id.*)

The second document is related and reflects that Dr. Young examined White's foot the next day—May 8, 2018. (*Id.* at 11.) Dr. Young prescribed White Tylenol for a period of 30 days, and she again directed that White see a physician at his "final destination" for his right foot. (*Id.*)

White does not specifically allege that he told Dr. Young about the May 3, 2018 pre-operative visit—which he had already missed—or the scheduled May 14, 2018 surgery, but he claims that Dr. Young's deferring his treatment until he reached his "final destination" exhibited deliberate indifference. Specifically, he faults her for deferring his treatment: "(i) fully aware of his scheduled surgery at SFAC; or (ii) without regarding his Medical Transfer Sheet and Chart, which informed [her] of his scheduled surgery at SFAC." (Compl. ¶ 15.) He also alleges that Dr. Young had a duty to consult his transfer sheet from RRJ and it "is something

---

[4] The court understands that generally, VDOC offenders are not told the exact dates or times of their outside medical appointments for security reasons. So, it is likely that White did not know the actual dates of either his pre-operative visit or his surgery.

that is done at NCC as a matter of medical protocol." (Compl. ¶ 16.) He therefore essentially alleges that Dr. Young either knew or should have known of his surgery and allowed his May 14, 2021 scheduled surgery date to pass without his receiving the surgery. (*Id.* ¶ 17.)[5]

White further alleges that he missed his scheduled surgery and was transferred to Augusta Correctional Center ("ACC") on June 5, 2018.[6] Neither his complaint nor the medical records offer any explanation as to why the surgery did not occur.[7] But, as Dr. Young notes, White does not allege that she was responsible for ensuring transportation to any outside appointments or for rescheduling them. He also does not allege that she was responsible in any way for completing the transfer paperwork for his transfer from Nottoway to ACC, which did not include information about his right foot, the lesion, or any previously scheduled or missed surgery or appointments. (ECF No. 24-2, at 123.)

The medical records reflect that ACC physician Dr. Smith performed an excision on White's right foot in March 2020, and subsequently referred him to an outside surgeon, who performed another excision in April to remove an additional half-centimeter from all sides of the lesion and to check the margins for malignant cells. After that surgery, White's wound became infected, and Dr. Smith treated him with several different courses of antibiotics until

---

[5] By the time Dr. Young saw him on May 8, White already had missed his May 3 pre-operative visit with the surgeon. Thus, if she did consult the sheet, she would have known that the pre-operative visit would have to be rescheduled before the surgery could occur.

[6] As is evident from other information in the case (including the complete copy of his medical records), there was no notation on the transfer form from Nottoway to ACC about either White's right foot or any scheduled surgeries or appointments.

[7] Based on publicly available maps, that the two facilities (RRJ in Stafford, Virginia, and Nottoway in Burkeville, Virginia) are located more than 100 miles (and at least a two-hour drive) apart. The outside provider with whom treatment was scheduled for his foot was located in Stafford, not Burkeville. (Med. R. at 3 (referencing appointment and "Dr. Roussell at Stafford Foot and Ankle Center in Stafford" and surgery with "Dr. Roussell at Stafford Hospital Center").)

the infection cleared. (*See generally* ECF No. 24-2; *see also* Smith Aff. ¶¶ 15–26, ECF No. 24-1.) Dr. Smith stated in his affidavit, and White's medical records reflect, that the final diagnosis of the lesion was "non-cancerous cellular blue nevus," not malignant melanoma. (Smith Aff. ¶ 26; ECF No. 24-2 at 5, 6, 8.)[8]

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the

---

[8] White's complaint cites to the "American Osteopathic College of Dermatology (www.AOCD.com)" for the definition of a "blue nevus": "a solitary blue-colored mole that can present at birth or develop late on in life, and can remain unchanged throughout the duration of a person's life." (Compl. ¶ 28.) He further alleges that the AOCD describes two kinds of blue nevus: "(a) a 'common blue nevus,' which is usually flat or dome-shaped with a smooth surface, between 0.5-1 cm, with color varying from being blue-gray to blue black; and (b) a 'cellular blue nevus,' which is larger, at least 1 cm in diameter, more nodular, can increase in size over time, and become ulcerated and malignant, including becoming malignant melanoma." (*Id.*)

complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.   <u>ANALYSIS</u>

A.  *Dr. Young*

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up). To hold an official liable under § 1983, the plaintiff must affirmatively show that the official "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks and

citation omitted). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" *Williamson*, 912 F.3d at 171 (quoting *Iqbal*, 556 U.S. at 676).

White claims that Dr. Young violated the Eighth Amendment's prohibition of cruel and unusual punishment. "Under the Eighth Amendment, [convicted] prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a defendant "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.* (citations omitted).

A claim of deliberate indifference has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This is an "exacting standard," which requires more than "mere negligence or even civil recklessness." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To establish a constitutional violation, "it is not enough that an official *should* have known of a risk" to an inmate's health. *Id.* Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

To constitute deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by*

*Farmer*, 511 U.S. at 837. "The subjective component therefore sets a particularly high bar to recovery." *Iko*, 535 F.3d 225, 241 (4th Cir. 2008).

In her motion to dismiss, Dr. Young first argues that she is entitled to qualified immunity. In particular, she contends that her alleged conduct resulting in, at most, a three-week delay in surgery (from the time of her treatment until the time White transferred to ACC) did not violate a clearly established constitutional right. Although listed separately from her qualified immunity arguments, she also argues that the facts as alleged fail to state an Eighth Amendment violation. Because the court concludes that White has failed to state a claim against Dr. Young, it will dismiss White's claim against her pursuant to Rule 12(b)(6).[9]

The court assumes, for purposes of this opinion, that White's lesion was a serious medical condition, in that a physician at RRJ had determined that it warranted surgical intervention. Even so, White's allegations do not establish that Dr. Young was deliberately indifferent to his medical needs. First of all, Dr. Young provided some treatment to him; she did not ignore his complaint or fail to treat him. According to White's allegations, Dr. Young examined him the day after he first complained to a nurse about the lesion on his foot. During that evaluation, she approved follow-up care to evaluate the lesion at his final destination. She also prescribed him Tylenol for the pain for a period of 30 days, which was longer than the remaining time he spent at Nottoway.

Second—and importantly—White does not allege facts that would establish that Dr. Young had actual awareness of an "excessive risk" posed by her actions. *See Jackson*, 775 F.3d

[9] Because White has not adequately pled a violation of a constitutional right, Dr. Young also is entitled to qualified immunity. *See ACLU of Maryland, Inc. v. Wicomico Cty.*, 999 F.2d 780, 784 (4th Cir. 1993) ("If the plaintiff's allegations fail to establish a constitutional claim, the defendant is entitled to dismissal on the basis of qualified immunity, or, of course, under Fed. R. Civ. P. 12(b)(6).")

at 178. White alleges that Dr. Young either knew or should have known about his upcoming surgery, although he does not allege that he told her about it. But even assuming that Dr. Young had actual knowledge of the surgery, she also knew that he had missed his pre-operative visit, which would mean that both it and his surgery needed to be rescheduled. Whether she knew about the surgery or not, though, her decision to postpone treatment for him until after he transferred to his final destination—which occurred less than four weeks after Dr. Young examined him—was not so grossly incompetent as to show deliberate indifference. *Cf. Miltier*, 896 F.2d at 851. Indeed, a determination either that his treatment could wait until his impending transfer, or that that the surgery (and any pre- and post-operative appointments) should be scheduled by medical officials at White's final destination, was reasonable under the circumstances. As noted above, neither the transfer forms nor the information White provided to Dr. Young suggested that he was suffering from an acute medical condition, and White did not appear to be in significant pain. Because White has not plausibly alleged that Dr. Young knew or should have known he would not receive timely treatment from a physician at his final destination (as she had directed), at most she is responsible for a four-week delay in treatment (from the time she saw him until the time he was transferred). This slight delay in receiving medical care does not give rise to an Eighth Amendment violation under the facts alleged.

As the Fourth Circuit has explained, no Eighth Amendment violation will lie based on a *delay* in medical care unless "'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *See Formica v. Aylor*, 739 F. App'x 754, 755 (4th Cir. 2018) (quoting *Webb v.*

*Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008)). White has not alleged any facts to show that he suffered any harm from a four-week delay in treatment.  And although there was an additional delay (not attributable to Dr. Young) after his transfer to ACC, White did eventually undergo surgery, and a non-malignant lesion was removed.

Additionally, courts have stated that "the length of delay that is tolerable depends on the seriousness of the condition and *the ease of providing treatment*." *Formica*, 739 F. App'x at 758 (emphasis added) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Here, Nottoway was essentially an interim facility for White, and nothing about the timing of his transfers and the original surgery date suggests that it would have been easy to arrange for another pre-operative visit and surgery before his short stay there ended.

For all of these reasons, White has failed to state an Eighth Amendment claim against Dr. Young. Accordingly, Dr. Young's motion to dismiss must be granted.

B. *Nurse A. Phyl*

This case remains pending against defendant Nurse A. Phyl. By order entered November 17, 2021, the court directed White to show cause, if there is any reason, as to why his claims against Phyl should not be dismissed without prejudice based on White's failure to provide an address at which Phyl could be served. (ECF No. 54.) White was advised that if he did not respond or if he failed to provide adequate information to allow service, then Nurse Phyl would be dismissed without prejudice. (*Id.* at 2–3.) The deadline for responding to that Order has passed, and White has not filed anything in response. The court will therefore dismiss all claims against defendant Nurse A. Phyl without prejudice.

## IV.   CONCLUSION

For the reasons stated, the court will grant Dr. Young's motion to dismiss. To the extent White's complaint could be construed as asserting any state-law claims against Dr. Young, the court will decline to exercise supplemental jurisdiction over any such claims. *See* 28 U.S.C. § 1367(c). The court also will dismiss without prejudice all claims against defendant A. Phyl.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 11th day of January, 2022.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE